[No. 26533. Department One. September 22, 1937.]

OSCAR PETERSEN et al., Respondents, v. THE CITY OF
SEATTLE et al., Appellants.[1]

A. C. Van Soelen, John A. Homer, Eggerman & Ros-
ling, and Joseph J. Lanza, for appellants.

John F. Dore and T. M. Royce, for respondents.

Evans, McLaren & Littell, amicus curiae.

GERAGHTY, J.—This is an appeal from a decree of the
superior court of King county awarding injunctive re-
lief to the plaintiffs Petersen and wife against the city
of Seattle and the Seattle Rod and Gun Club, and re-
quiring the removal by the defendants of certain struc-
tures maintained by the rod and gun club and its
licensee in Georgia street at its intersection with Har-
bor avenue southwest, in the city of Seattle.

[1]Reported in 71 P. (2d) 668.

March 7, 1934, the city of Seattle, pursuant to an ordinance of the city council, leased to the rod and gun club that portion of Georgia street lying between the easterly line of Harbor avenue southwest and the inner harbor line of West Waterway, for such use as might be necessary or incidental to the maintenance of a salt water fishing club by the lessee. Later, the rod and gun club sublet a portion of the leased area to a subtenant for the operation of a restaurant.

The restaurant was opened in March, 1935, and a few days thereafter this action was brought to abate the operations of the rod and gun club and its licensee as a nuisance, alleging the illegality of the lease and ordinance as permitting the occupation and use of a public street for private purposes.

In their complaint, the plaintiffs alleged the ownership of property abutting on the west side of Harbor avenue, situate some 150 feet southerly from the intersection of Georgia street with that avenue; that for several years past they had conducted a restaurant on their own premises, and that they are sustaining a heavy loss of patronage to the restaurant maintained by the rod and gun club and its licensee in Georgia street.

After hearing, a temporary injunction was granted enjoining the defendants from carrying on the restaurant or other business in Georgia street within the limits defined in the order. Subsequent to the entry of the temporary injunction, on the petition of the abutting owners, the city council of Seattle formally vacated the street in controversy. The passage of the vacation ordinance was set out in a supplemental answer filed by the defendants.

After trial upon the merits, a decree was entered permanently enjoining the defendants, as prayed for in the complaint, and directing them to remove all

buildings maintained by them in the street. The defendants appeal.

When a private party seeks to enjoin the maintenance of a public nuisance in a street, he is required to allege and prove special damage to himself differing in kind from the wrong to the general public. Whether or not, assuming the vacation to be void, the plaintiffs' complaint sufficiently alleged, and their testimony proved, special damage, is not before us. In the course of the trial, Mr. Lanza, one of the attorneys for the defendant rod and gun club, stated:

"The only issue in this case is the validity of this ordinance passed by the city of Seattle on May 29, 1936. . . . As I was saying, Your Honor, the only question therefore is the validity of this ordinance."

The trial court made no findings, but, in stating the issues in its memorandum opinion, said:

"It is not now argued that the Court was wrong in issuing the injunction, and the sole question presented here is the effect of the ordinance vacating this portion of Georgia street."

So that, as the record comes before us, the sole question at issue is one of law,—whether the city council of the city of Seattle possesses the power to vacate a street platted by the state over tide lands. It is conceded that the proceedings had in the vacation were otherwise regular, if the city council possessed the power to vacate.

The first plat of the area with which we are here concerned was filed by the board of appraisers in 1895, pursuant to the act of March 26, 1890 (Laws of 1889-1890, p. 431). The plat designated Harbor avenue southwest, running parallel to a waterway to be laid out under another act of the 1889-1890 session, p. 731. This way was afterwards completed and is now known as West Waterway. After the completion of the water-

way, its west inner harbor line was established some distance out from the line of mean low tide. The plat also outlined Georgia street, running easterly from the easterly line of Harbor avenue southwest to the line of mean low tide.

While the plat outlined streets and public ways, the law of 1890 did not in terms authorize the board of appraisers to lay out streets. This omission was corrected by an act passed by the legislature in 1895, which provided, among other things, for the creation of a board of state land commissioners succeeding to the functions of the board of appraisers. Section 54 of the act provided:

"In surveying tide lands of the first class the said board of state land commissioners shall have power to, and it shall be their duty to, lay out streets and alleys, which shall thereby be dedicated to the public use, subject to the control of cities, with due regard to the convenience of commerce and navigation: *Provided further,* That all alleys, streets, avenues, boulevards and other public thoroughfares heretofore located and platted on tide lands of the first class by boards of tide land appraisers, are hereby validated as public highways and dedicated to the use of the public for the purposes for which they were intended; . . ." Chapter 178, Laws of 1895, p. 550.

Tide lands are defined in § 1 of this act, p. 527, as:

"All lands over which the tide ebbs and flows from the line of ordinary high tide to the line of mean low tide, except in front of cities where harbor lines have been established or may hereafter be established, where such tide lands shall be those lying between the line . . ."

As we have seen, on the first plat, Georgia street was platted only out to the line of mean low tide. This was on the assumption that the law of 1890 authorized only the platting of lands over which the tide ebbed and flowed and which were bare at low tide.

This court held, in *State ex rel. McKenzie v. Forrest*, 11 Wash. 227, 39 Pac. 684, that the term "tide lands," as used in the constitution and legislation of the state, embraced the area lying between the line of ordinary high tide and inner harbor lines when established. This definition was embodied in the 1895 act.

Since the 1895 plat did not embrace the area between the line of mean low tide and the inner harbor line, the commissioner of public lands, pursuant to statutory authority, in 1927, caused to be filed a plat of this area, designated "Tide Lands, Extension No. 1." On this plat, Georgia street is shown extended to the inner harbor line. On the first plat, the two blocks abutting on either side of Georgia street were numbered 448 and 449. The area beyond these blocks abutting on the extended street were shown on the extension plat as 448-A and 449-B. The new plat did not change the outlines of Georgia street or of the abutting blocks as they appear on the first plat. The extension plat is not called a replat, nor does it purport to be one, although the lines of the earlier platting are shown.

Municipal corporations possess no inherent power to vacate streets. The power must be conferred by the legislature in express terms or by necessary implication.

Chapter 84, Laws of 1901, p. 175 (Rem. Rev. Stat., § 9297 [P. C. § 1277] *et seq.*), confers power upon the cities and towns of the state to vacate any street or alley, or any part thereof, on the petition of two-thirds of the owners of private property abutting upon the part of the street sought to be vacated. This law is general in its terms, making no exception based upon the source from which the dedication has come.

Respondents contend, however, and the trial court held, that, under chapter 255 of the 1927 Session Laws,

p. 468 (Rem. Rev. Stat., § 7797-1 [P. C. § 6334-11] *et seq.*), the sole power to vacate streets platted over tide land areas is reposed in the commissioner of public lands. If this be so, then there is no power anywhere to vacate a single tide land street, because the vacations authorized in chapter 255 are those necessarily involved in replatting.

The question is of great moment, because, as stated in the brief *amicus curiae,* it is a matter of common knowledge that cities have in the past, acting under authority of chapter 84, Laws of 1901, p. 175, exercised the power on numerous occasions. Large areas of what were formerly tide lands have, after platting and after the state had parted with its title, been adapted to industrial uses and lost the character of tide lands; their surface has been raised above the influence of the tides and are but little distinguishable in use from the adjacent shore lands.

In early day plattings, whether of tide or upland, lots or blocks were outlined on a more or less uniform pattern. On tide lands, as on uplands, the development of the cities and the necessities of industry at times require the vacation of streets and readjustments not possible in the absence of authority to vacate single streets or alleys.

Chapter 255, Laws of 1927, p. 468, is largely a codification of the prior land laws of the state, including tide lands. Rem. Rev. Stat., § 7797-108 [P. C. § 6334-118], cited by respondents, provides:

"All alleys, streets, avenues, boulevards, waterways and other public places heretofore located and platted on the tide and shore lands of the first class, or harbor areas, as provided by law, and not heretofore vacated as provided by law, are hereby validated as public highways and dedicated to the use of the public for the purposes for which they were intended, subject however to vacation as in this act provided."

This section is substantially in the language employed in the latter part of § 54, chapter 178, Laws of 1895, p. 550, with the exception of the phrase "subject, however, to vacation as in this act provided."

It is to be observed that, while this proviso saves the right to vacate as in the act provided, it does not make the process of vacation therein provided exclusive. The provision was inserted, manifestly, out of an abundance of caution, to make certain the reservation of authority to make the vacations necessarily involved in the replatting contemplated by the act.

When we look to the 1927 act for the vacations authorized by its provisions, we find that §§ 114, 115, and 116, pp. 526, 527 (Rem. Rev. Stat., §§ 7797-114, 7797-115, 7797-116 [P. C. §§ 6334-124, 6334-125, 6334-126]), relate to the replatting of tide lands, the vacation of public ways shown on prior plats, and the substitution in their stead of the ways dedicated on the replat. Section 117, p. 527, provides:

"The foregoing sections are intended to afford a method of procedure, in addition to other methods provided in this act for the vacation of streets, alleys, waterways and other public places platted on tide or shore lands." (Rem. Rev. Stat., § 7797-117 [P. C. § 6334-127].)

Section 118, p. 527 (Rem. Rev. Stat., § 7797-118 [P. C. § 6334-128]), provides a method for the vacation of waterways established but not excavated, or where, having been excavated, they are no longer required in the public interest, with provision for disposal of the land after vacation.

Section 119, p. 529, provides:

"Any replat of tide or shore lands heretofore, or hereafter, platted shall be in full force and effect and shall constitute a vacation of streets, alleys, waterways and other public places theretofore dedicated and the dedication of new streets, alleys, waterways and other

594

public places appearing upon such replat, when the same is recorded and filed as in the case of original plats." (Rem. Rev. Stat., § 7797-119 [P. C . § 6334-129]).

Sections 118 and 119 would seem to be the other methods referred to in § 117.

These provisions, having to do with the replatting, are the only ones cited by the respondents in support of their position. As against these, is the direct and unqualified grant of power to the cities by chapter 84 of the 1901 Session Laws. There is nowhere found in the law of 1927 any express limitation upon the grants to the cities by the act of 1901, and repeals by implication are not favored. The 1927 codification evidences great care in its preparation, and, if it had been its purpose to restrict a power theretofore possessed by municipalities, it would have so provided in specific terms.

This was done in one instance, which is illustrative of the care taken in preparation of the act. Chapter 92 of the 1903 Session Laws, p. 139 (Rem. Rev. Stat., § 9312 [P. C. § 1188] *et seq.*), authorizes the vacation and replatting of townsites and additions by the cities and boards of county commissioners. This act, like chapter 84 of the 1901 Session Laws, was general in its terms and authorized proceedings somewhat similar to those provided for in the cited sections of chapter 255 of the 1927 laws in respect of replatting.

To make certain the legislative purpose to vest the state land commissioner with the exclusive right to make replats of tide lands, the legislature enacted chapter 139 of the Laws of 1927, p. 123 (Rem. Rev. Stat., § 9311 [P. C. § 1187]), which amended § 1 of chapter 92 of the 1903 Laws, p. 139, by re-enacting the section with the proviso:

"*Provided,* That this section shall not be construed as applying to the alteration, replatting or vacation of any plat of state granted, tide, or shore lands."

If it had been the legislative purpose to restrict the application of the vacation statute of 1901, it is reasonable to assume that such purpose would have been evidenced by a like amendment of the act or by some express provision in chapter 255.

The judgment appealed from is reversed, and the cause remanded with direction to dismiss.

STEINERT, C. J., MAIN, MILLARD, and BLAKE, JJ., concur.